ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR - 5 2010
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| BOBBY DAN ROBERTS, | § § § | |
| Plaintiff | § § | |
| vs. | § | Civil Action No. 3-08CV1804-N |
| SCM PROPERTY COMPANY, LLC, | § § § | |
| Defendant. | § § | |

## JOINT PRETRIAL ORDER

TO THE HONORABLE DAVID GODBEY, U.S. DISTRICT JUDGE PRESIDING:

COME NOW, Plaintiff and Defendant, who would file this, their Joint Pre-Trial Order pursuant to Local Rule 16.4, and would respectfully show the Court as follows:

A.   SUMMARY OF THE CLAIMS AND DEFENSES

Plaintiff's Claims:

This matter arises from an alleged breach of contract between Plaintiff Bobby Dan Roberts ("Roberts") and Defendant SCM Property Company, LLC ("SCM").[1] In this case, Roberts sues SCM, his former employer, claiming he is owed additional compensation pursuant to the terms of an employment contract. The terms of the employment contract included an annual salary and a 10% profit sharing agreement on certain projects.

According to the contract, Roberts would be paid an annual salary of $100,000, paid every two weeks, plus a profit sharing/override of 10% of profits and net income on transactions Roberts generated. Roberts was guaranteed a minimum of $25,000 per project. Roberts asserts that the employment contract remained in effect until his termination by SCM in June 2008.

---

[1] According to its web site, SCM Property Company, LLC changed its name to Prime Properties after this lawsuit was filed. Additionally, Roberts sued several related entities in his First Amended Petition. The Court determined in its Order on Roberts' motion to remand that those entities were not properly sued. Roberts does not waive his claims against those entities for purposes of preserving error for appellate review.

{00106233.1}

Roberts asserts that he generated a number of transactions for which he was entitled to profit sharing in accordance with the agreement. To date, he has received compensation from SCM for only three of these transactions.

Roberts asserts that SCM's failure to pay him for the other transactions in accordance with the contract constitutes a breach of contract. Additionally, Roberts brings claims for fraudulent inducement, promissory estoppel and quantum meruit. Roberts also seeks a declaration that he is entitled to the agreed 10% profit sharing on projects within the scope of the employment contract which have not yet sold.

Roberts asserts that because of SCM's breach of contract and other wrongful actions, he is entitled to actual damages, attorneys' fees and expenses, costs, pre-judgment and post-judgment interest, and any other relief to which he is legally entitled.

Defendant's Defenses:

Defendant contends it complied with the terms stated within the February 21, 2004 e-mail. Any failure by Defendant to comply with the terms stated within the e-mail is excused by waiver or estoppel because Defendant paid Plaintiff additional compensation outside the February 21, 2004 email in reliance upon Plaintiff's requests and representations which contradict his claims in this case. In addition, Defendant contends it complied with any promises of future performance and intended to perform as promised at the time the February 21, 2004 e-mail was sent to Plaintiff. Defendant maintains Plaintiff received all compensation to which he was entitled.

    **B.**    **STATEMENT OF STIPULATED FACTS**

1. Defendant is a real estate developer in Albuquerque, New Mexico that purchases land and builds restaurants and shopping centers.

2. Steve Maestas is the managing member for the Defendant.

3. Plaintiff was hired by Defendant as a director of real estate whose principal duties included identifying development sites, negotiating purchases of sites, negotiating ground leases, tenant leases and interacting with the development team for the development of the site.

4. Plaintiff worked for Defendant until June 2008.

5. Plaintiff's annual salary was increased from $100,000 to $128,000 in August 2005.

6. After August 2005, Plaintiff received employment benefits from SCM.

7. Plaintiff received $126,000, made in two payments in December 2006 and June 2007.

## C. CONTESTED ISSUES OF FACT

**Plaintiff's Contested Issues of Fact:**

1. Whether an agreement/contract existed at the time Roberts began working for SCM.

2. The terms of the agreement.

3. The duration of the agreement.

4. Whether the February 21, 2004 e-mail from Steve Maestas to Bobby Dan Roberts contained the material terms of the employment contract between SCM and Roberts.

5. That Roberts's initial annual salary was $100,000 per year.

6. Whether Roberts would receive a profit sharing/override of 10% of profits and net income on transactions Roberts generates.

7. That Roberts would be guaranteed a minimum of $25,000 per project.

8. In reliance on the contract between SCM and Roberts, Roberts left his employment with Brinker International to work for SCM.

9. In August 2005, Roberts's annual salary was increased from $100,000 to $128,000 as a "tweak or adjustment" to his contract with SCM.

10. In August 2005, SCM began paying Roberts typical employment benefits as a "tweak or adjustment" to his contract with SCM.

11. The profit sharing/override of 10% of profits and net income continued until Roberts' termination in June 2008.

12. SCM paid Roberts $126,000 for three projects he had generated under the contract.

13. SCM has not paid Roberts for any other projects he generated as required under the agreement/contract.

{00106233.1}

14. Roberts's entitlement to profit sharing/override under the agreement/contract did not change in August 2005 or at any other time.

15. The restaurant and raw land of Main & Temple and Riverside are separate projects for which Roberts is owed profit sharing/override.

16. SCM has breached the employment contract with Roberts.

17. SCM's breach of the employment contract is not excused by waiver, estoppel, ratification, failure to perform conditions precedent, or any other legal theory.

18. Roberts never waived his rights under his employment contract with SCM.

19. Roberts never made a false representation or concealed material facts.

20. SCM's failure to comply with the employment contract caused Roberts injury.

21. There was no "agreement" in August 2005 that superseded the employment contract between SCM and Roberts.

22. Roberts has performed all conditions precedent to his recovery under the employment contract with SCM.

23. That the $126,000 paid to Plaintiff reflects the intent of the parties regarding the meaning of "transactions you generate."

24. That the $126,000 paid to Plaintiff reflects the parties' intent that the 10% profit sharing be calculated on the total profits of the project rather than just SCM's behalf.

25. That the development fee of 4% paid to SCM was not an actual expense that should be deducted prior to calculation of net profits/income.

26. Whether the profit sharing agreement of Stephen Jackson provides a correct method of calculating Roberts' 10% profit share.

27. Whether Roberts is entitled to payment of the profit sharing agreement on projects that have not sold as of the trial date.

28. Roberts has not failed to mitigate his damages

29. There is no valid basis to reduce or offset Roberts's damages for any reason.

30. SCM made representations to Roberts that were material and false.

{00106233.1}

31. When SCM made these representations to Roberts, it knew that they were false or made them recklessly, as a positive assertion, and without knowledge of their truth.

32. SCM made the representations with the intent that Roberts act on them.

33. Roberts entered into a binding agreement (the employment contract) based on SCM's material, false representations.

34. Roberts was injured by SCM's material, false representations.

35. Roberts's claim for fraud in the inducement is not precluded by any partial performance by SCM of the employment contract.

36. Alternatively, if the jury should find that there was not an enforceable employment contract between SCM and Roberts, Roberts provided valuable services to and for SCM, SCM accepted the services, and SCM had reasonable notice that Roberts expected compensation for the services.

37. Alternatively, if the jury should find that there was not an enforceable employment contract between SCM and Roberts, SCM made promises to Roberts, Roberts reasonably and substantially relied on the promises to his detriment, Roberts's reliance was foreseeable by SCM, and injustice can be avoided only by enforcing SCM's promises.

38. Roberts is entitled to damages reflecting his profit sharing agreement for all transactions he generated.

39. Roberts is entitled to damages reflecting his profit sharing agreement for the I-25/San Mateo project.

40. Roberts is entitled to damages reflecting his profit sharing agreement for the Bloomfield project

41. Roberts is entitled to damages reflecting his profit sharing agreement for the 528 & Grande project.

42. Roberts is entitled to damages reflecting his profit sharing agreement for the Montana & McRae project

43. Roberts is entitled to damages reflecting his profit sharing agreement for the Main & College project.

44. Roberts is entitled to damages reflecting his profit sharing agreement for the Main & Temple – Starbucks project.

{00106233.1}

45. Roberts is entitled to damages reflecting his profit sharing agreement for the Main & Temple – Raw Land project.

46. Roberts is entitled to damages reflecting his profit sharing agreement for the Riverside-McDonalds project.

47. Roberts is entitled to damages reflecting his profit sharing agreement for the Riverside-Raw Land project.

48. Roberts is entitled to damages reflecting his profit sharing agreement for the Telshor & Commerce project

49. Roberts is entitled to damages reflecting his profit sharing agreement for the 54th & Transmountain project.

50. Roberts is entitled to damages reflecting his profit sharing agreement for the Sudderth & Navajo project.

51. Roberts is entitled to damages reflecting his profit sharing agreement for the 6th & University project.

52. Roberts is entitled to damages reflecting his profit sharing agreement for the Farmington I project.

53. Roberts is entitled to damages reflecting his profit sharing agreement for the Valley & Grigsby project.

54. Roberts is entitled to damages reflecting his profit sharing agreement for all of the Southern & Unser projects.

55. Roberts is entitled to the agreed 10% profit sharing on projects within the scope of the employment contract which have not yet sold.

56. That Plaintiff is entitled to reasonable and necessary attorney fees as the prevailing party in a contract dispute.

57. The dollar amount of attorney fees that is owed to Plaintiff as the prevailing party.

58. Whether attorney fees should be awarded to the Plaintiff as prevailing party on a contingency fee basis rather than an hourly basis.

59. The amount of any future reasonable and necessary attorney fees owed to Plaintiff as the prevailing party, including all post verdict motions and appeals.

{00106233.1}

**Defendant's Contested Issues of Fact:**

In addition to the above contested issues of fact:

1. The February 21, 2004 e-mail from Steve Maestas to Plaintiff states there is a term of "one year," Plaintiff will be considered an independent contractor and it can be renewed annually.

2. The terms of Plaintiff's employment for his entire tenure with Defendant are contained within the February 21, 2004 e-mail from Steve Maestas to Plaintiff.

3. The February 21, 2004 e-mail from Steve Maestas to Plaintiff states there is a term of "one year," Plaintiff will be considered an independent contractor and it can be renewed annually.

4. After August 2005, Plaintiff received employee benefits from SCM including social security and medicare taxes, unemployment insurance, workers compensation, IRA contributions, health, dental and vision insurance, paid vacation and holidays, sick leave. In addition, Plaintiff also received reimbursement from SCM for his travel, equipment and other expenses.

5. Plaintiff's employment status, along with his compensation structure, changed from an independent contractor to an employee in August 2005.

6. The February 21, 2004 e-mail between Steve Maestas and Plaintiff was limited to one year.

7. The February 21, 2004 e-mail agreement ended in August 2005.

8. Plaintiff received discretionary bonuses in December 2005, June 2007, and December 2007.

9. Plaintiff generated transactions pursuant to the terms of the February 21, 2004 e-mail between Steve Maestas and Plaintiff for which he is entitled to compensation.

{00106233.1}

10. The $126,000 made in two payments constituted a settlement of any claims Plaintiff may have had for compensation under the terms of the February 21, 2004 e-mail.

11. The calculation of Plaintiff's share in each project, if any, should be limited to Steve Maestas' 50-percent ownership interest in RPS Development.

12. Plaintiff's recovery, if any, should be limited to transactions he generated that were purchased prior to August 2005.

13. The restaurant and raw land of Main & Temple and Riverside should not be separated for purposes of determining any amounts owed to Plaintiff.

14. Commissions paid to Maestas & Ward and/or SCM on the sale of a property should be included within the net gain from sale of the property for purposes of determining any amounts owed to Plaintiff.

15. Calculation of any amounts owed to Plaintiff as compensation should not be based on any agreements involving Steven Jackson.

16. Whether the February 21, 2004 e-mail between Plaintiff and Defendant was a valid, enforceable agreement.

17. If there was a valid, enforceable agreement, whether Defendant complied with the terms of the February 2004 e-mail.

18. Whether any failure to comply with the terms of the February 2004 e-mail was excused by waiver, estoppel, ratification or his failure to perform conditions precedent.

19. Whether Plaintiff intentionally relinquished a known right or intentionally engaged in conduct inconsistent with claiming a known right.

20. Whether Plaintiff, by words or conduct, made a false representation or concealed material facts.

21. Whether Plaintiff intended his representation or concealment be acted on.

22. Whether Plaintiff knew or had the means of knowing the real facts.

{00106233.1}

23. Whether Defendant neither knew nor had the means of knowing the real facts.

24. Whether Defendant relied on Plaintiff's representation or concealment to its detriment.

25. Whether any failure to comply with the terms of the February 2004 e-mail caused the Plaintiff injury.

26. Whether Plaintiff and Defendant entered into an agreement in August 2005.

27. Whether Plaintiff approved an agreement for employment in August 2005 by his acts, words or conduct.

28. Whether Plaintiff knew of the facts of the August 2005 agreement.

29. Whether Plaintiff performed a voluntary, intentional act that is inconsistent with an intent to avoid the August 2005 agreement.

30. Whether Plaintiff ratified the agreement in August 2005.

31. Whether Plaintiff performed all conditions precedent to his recovery under the February 2004 e-mail.

32. Whether Plaintiff failed to mitigate his damages, if any.

33. Whether damages sustained by Plaintiff, if any, should be reduced by any payments, offsets or amounts Plaintiff could reasonably have avoided.

34. Whether Plaintiff's recovery, if any, for transactions he generated that were purchased after August 2005, should be offset by the increased salary and benefits that were not specified in the February 21, 2004 e-mail between Steve Maestas and Plaintiff.

35. Whether Defendant or Steve Maestas made a false representation to Plaintiff.

36. Whether the misrepresentation, if any, made by Defendant or Steve Maestas was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion.

37. Whether Defendant or Steve Maestas intended to deceive Plaintiff.

38. Whether the misrepresentation, if any, made by Defendant or Steve Maestas caused the Plaintiff injury.

39. Whether Defendant committed fraud against Plaintiff.

40. Whether Defendant's partial performance under the February 2004 e-mail precludes Plaintiffs' fraud claim.

41. Whether Defendant made a promise to Plaintiff outside of the February 21, 2004 e-mail that Plaintiff reasonably and substantially relied on to his detriment.

42. Whether Plaintiff provided services to Defendant outside of the February 21, 2004 e-mail for which he has not been compensated.

43. Whether Plaintiff is entitled to compensation if Defendant failed to comply with the terms of the February 21, 2004 e-mail.

D.   **CONTESTED ISSUES OF LAW**

**Plaintiff's Contested Issues of Law:**

1. Whether the Court will declare that Plaintiff is entitled to the agreed 10% profit sharing on projects within the scope of the employment contract which have not yet sold.

**Defendant's Contested Issues of Law:**

1. Whether Plaintiff is entitled to recover for breach of an alleged express contract while also recovering for promissory estoppel and quantum meruit, which are barred by the existence of an express contract.

2. Whether Plaintiff is entitled to a declaratory judgment with respect to his ownership interest in Defendant.

{00106233.1}

3. Whether Plaintiff should receive a current damage award for properties he generated, if any, and that Defendant has not sold on the basis the February 2004 email only anticipated a passive interest in properties resulting in compensation as and when the properties are sold.

4. Whether Plaintiffs' appraisals of unsold properties are speculative and unreliable.

E. **AN ESTIMATED LENGTH OF TRIAL**

The estimated length of trial is 3-5 days.

F. **ADDITIONAL MATTERS THAT MIGHT AID IN DISPOSITION**

1. Defendant's Motion to Exclude Expert Testimony of Gary Durham and Defendant's Motion in Limine.

2. Plaintiff will file a Motion in Limine.

3. If necessary, Roberts may seek to amend his complaint to add Prime Properties, the name of the successor entity, to the name of the entity sued (SCM Property Company, LLC).

Respectfully submitted,

**MARSHALL WHITE, LLP**

BY: /s/ Christopher C. White
**Christopher C. White**
Attorney -in- Charge
State Bar No. 00794841
Chris.White@marshallwhitellp.com
901 Main Street, Suite 4100
Dallas, Texas 75202
214-722-7100
214-722-7111 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SCM PROPERTY COMPANY, LLC**

{00106233.1}

Approved as to form and substance:

/s/ Christopher C. White
Christopher C. White, Attorney in Charge for Defendant

/s/ Don Tittle
Don Tittle, Attorney in Charge for Plaintiff

**This Joint Pretrial Order is hereby approved.**

    **SIGNED** on this the ___5___ day of ___March___, 2010.

                                        David C. Godbey
                                        United States District Judge

{00106233.1}